UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDWARD RENDER,

    Plaintiff,

v.                                            Case No. 19-12984

FCA US LLC,

    Defendant.
_____/

**AMENDED OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT[1]**

Plaintiff Edward Render sues Defendant FCA US LLC ("FCA") under the Family Medical Leave Act ("FMLA") alleging interference and retaliation claims. (*See* ECF No. 1.) Plaintiff alleges that he was unlawfully fired from his employment as an autoworker at FCA's Trenton Engine Plant in January 2018 after attempting to take FMLA leave. Defendant now moves for summary judgment against both of Plaintiff's FMLA claims. (ECF No. 22.) The court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided below, the court will grant Defendant's motion for summary judgment.

**I.   BACKGROUND**

Plaintiff first began working as an hourly worker in FCA's Trenton Engine Plant in 2013. (ECF No. 1, PageID.2; ECF No. 22, PageID.95.) Plaintiff was employed as a unionized worker represented by the United Auto Workers ("UAW") and was subject to a collectively bargained progressive attendance policy. In 2015, Plaintiff was terminated

---

[1] The court amended the opinion and order to correct a typographical error to clarify the opinion. The reasoning and holdings of the court have not changed.

by FCA for exceeding the number of unexcused absences and tardies permitted under the attendance policy. After Plaintiff successfully pursued a grievance through the UAW, he was reinstated by FCA in April 2017 subject to a "Conditional Reinstatement Letter." (ECF No. 22, PageID.96.) The letter stated that Plaintiff would be subject to immediate discharge after one unexcused absence or two unexcused tardies in the first 12 months following his reinstatement. (*Id.*) As part of the reinstatement process, Plaintiff submitted a letter to FCA pledging that he would leave for work earlier to avoid additional attendance issues while commuting to Trenton, Michigan from his Detroit home. (ECF No. 24, PageID.221-22.)

Plaintiff had applied for and utilized FMLA leave during his first stint at FCA before his 2015 termination. (ECF No. 22-2, PageID.138-40.) A month after he was reinstated in 2017, Plaintiff called Sedgwick (FCA's third-party FMLA administrator) to inquire if he qualified for FMLA leave. (ECF No. 22-11, PageID.178.) Because Plaintiff had only worked 188.5 hours so far that year, he was told he did not yet qualify. (*Id.*) After accruing an unexcused tardy on September 6, 2017, Plaintiff called Sedgwick in October 2017, and a representative informed him that he had now worked enough hours to potentially qualify for FMLA. (*Id.*; ECF No. 24, PageID.223.) Plaintiff promptly submitted a medical certification showing that he suffered from depression and generalized anxiety disorder, and based on this documentation, Sedgwick sent Plaintiff a letter indicating that he was "conditionally approved" for intermittent FMLA leave. (ECF No. 24-12, PageID.372-73.)

Because FMLA eligibility is officially determined on the first day of leave, Sedgwick's letter stated that Plaintiff must "Contact Sedgwick at the number listed

below on the date of your first FMLA-related absence or tardy" before calling FCA's main attendance hotline to receive final approval. (*Id.*) The letter lists both FCA's main attendance call-in hotline and the number for Sedgwick's "FCA Service Center." (*Id.*)

On December 6, 2017, Plaintiff called the main FCA attendance hotline to report that he would be absent that day. (ECF No. 24, PageID.224.) Plaintiff did not directly notify Sedgwick at its 1-888 number of the absence, but he disputes whether he followed the instructions in the letter when he called only FCA's "1-800 number" to report the absence. (*Id.*; ECF No. 22-2, PageID.144.) Defendant FCA recorded Plaintiff's call-in to its "1-800 [attendance] number" on December 6 and has now produced a certified transcript:

> THE OPERATOR: And are you calling in absent or tardy?
> MR. RENDER: **Absent.**
> THE OPERATOR: Absent due to what?
> MR. RENDER: **I'm having a flare-up. I don't feel good at all.**
> . . .
> THE OPERATOR: Absent due to what?
> MR. RENDER: **Oh, I gotta go to the doctor. I don't feel good, flare -- I'm having flare-ups.**
> THE OPERATOR: So illness?
> MR. RENDER: **Yes.**
> . . .
> THE OPERATOR: Will that be for today and today only?
> MR. RENDER: **Yes, today, yes.**
> THE OPERATOR: All right. So, I have you absent due to illness for the 6th of December. If you require more time, give us a call back.

(ECF No. 22-16, PageID.194.)

It is undisputed that Plaintiff was also absent from work the next day, December 7, 2017, but FCA indicates it has no record of Plaintiff calling in that day to report his absence, and that no recording exists. (ECF No. 22, PageID.98; ECF No. 22-12, PageID.179.) Plaintiff disputes this point, contending that he called FCA's attendance hotline like he did the day before. (ECF No. 22-2, PageID.143, 150.)

3

On December 8, 2017, Plaintiff again called FCA's attendance hotline, this time to report that he would be late. Defendant has also produced a transcript of this call:

> THE OPERATOR: . . . [A]re you calling in sick or tardy?
> MR. RENDER: **Tardy.**
> THE OPERATOR: Tardy, okay.
> MR. RENDER: **Yes.**
> THE OPERATOR: And for what reason?
> MR. RENDER: **Um, I've been sick the last few days.**
> THE OPERATOR: So I'll put tardy personal, other?
> MR. RENDER: **Yeah, personal -- or other.**
> THE OPERATOR: Okay. I'll put other, and I'll put a note on there for you; okay? I'll just say sick. So you're just gonna be late you said; right? So what is your ETA?
> . . .
> MR. RENDER: . . . **Probably 5:15 [pm] or 5:30.**

(ECF No. 22-16, PageID.195-97.)

Once Plaintiff returned to work on December 8, either Plaintiff or his direct supervisor informed LaVonda Mitchel, the Human Resources Manager at Trenton Engine, that Plaintiff was now claiming he had called in his absences the previous two days as FMLA leave. (ECF No. 22-3, PageID.163; ECF No. 22-2, PageID.144.) Because Plaintiff's absences show up as unexcused in FCA's timekeeping system, Mitchel sent an email to a Sedgwick representative at 10:24 pm on December 8, stating that Plaintiff "claims calling FMLA absent for 12-6-17 and 12-7-17. . . [and] tardy for 12-8-17." (ECF No. 22-3, PageID.163; ECF No. 24-13, PageID.382.) Mitchel's email requested that Sedgwick provide documentation on whether Plaintiff had actually called in an FMLA absence on those dates and to verify that Plaintiff was actually certified for FMLA leave. (*Id.*) A Sedgwick representative replied to Mitchel's email on December 11; the reply stated that Plaintiff was indeed conditionally approved for FMLA leave, however, "no absences [were] coded as FMLA." (ECF No. 24-13, PageID.381.)

4

On January 5th, 2018, Plaintiff again called FCA's attendance hotline, informing the operator in a recorded call that he would be late to work:

> THE OPERATOR: Are you calling in absent or tardy?
> MR. RENDER: **Um, tardy.**
> THE OPERATOR: Okay. Reason for the tardiness?
> MR. RENDER: **Um, I'm having a flare-up right now, and I don't feel good at all.**
> THE OPERATOR: Okay.
> MR. RENDER: **So I may have to call back, 'cause I'm feeling like really sick.**
> THE OPERATOR: That's fine. And what's the estimated time you think you'll make it in if you do come in?
> MR. RENDER: **Um, 5:30.**
> THE OPERATOR: 5:30. So I have you marked as tardy. I put other reasons, in the comments I put sick, estimated time of arrival 5:30 p.m. on the 5th of January; is that right?
> MR. RENDER: **Yes.**

(ECF No. 22-16, PageID.198-99.)

Because Defendant FCA recorded all these absences and tardies as unexcused, Plaintiff was subsequently terminated by FCA on January 11, 2018, for "multiple violations" of his conditional reinstatement agreement. (ECF No. 22-4, PageID.169.) Following his termination, Plaintiff filed a grievance with the UAW. (ECF No. 22-2, PageID.148-49.) When the UAW declined to pursue that grievance, he filed a charge with the National Labor Relations Board alleging a failure to represent him. (*Id.*) Plaintiff's charge was later rejected as untimely. (*Id.*) As part of the charge, however, Plaintiff submitted a sworn affidavit which states that "[i]n 2017 I was on FMLA sick leave from 12/6/17 to 12/7/17 – *I had come down with the flu* and also I have a documented FMLA (anxiety) sickness." (ECF No. 22-17, PageID.203 (emphasis added).)

5

In his statement of facts, Plaintiff now appears to admit that he used such "flare-up" and "really sick" language during the calls. However, Plaintiff posits that Defendant FCA actually knew Plaintiff was requesting FMLA leave for a qualifying reason. (ECF No. 24, PageID.225.) Plaintiff was questioned about his previous affidavit during his deposition for the present case:

> Q: [] When you called in to work on 12/6/2017, did you tell them you had the flu?
> A: **I don't recall. I could have. . .  I could have, but I -- it was a little more -- it was a little more. I just was embarrassed. Well, I didn't want to –**
> Q: You were embarrassed by what?
> A: **I didn't want to tell them what I was really going through.**
> Q: Okay. So on 12/7 when you called in to work, did you tell them you had the flu?
> A: **It's a possibility. I'm not sure.**
> Q: Okay. Is it possible that on 12/6 and 12/7 --
> A: **Yes, it is.**
> Q: -- that you did not tell the person you talked to when you called that you were suffering from anxiety or depression on that day?
> A: **No, I didn't.**
> Q: You didn't tell them that?
> A: **I don't recall telling them that.**

(ECF No. 22-2, PageID.150.)

In October 2019, Plaintiff filed the present suit challenging his termination alleging violations of the FMLA by FCA. (*See* ECF No. 1.) Discovery has now been completed in the matter and Defendant FCA moves for summary judgment on all of Plaintiff's claims. (ECF No. 22.)

## II.  STANDARD

To prevail on a motion for summary judgment, a movant must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presenting evidence that "demonstrate[s] the absence of a genuine issue of material

6

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility' of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### III. DISCUSSION

"The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)); 29 U.S.C. § 2612(a)(1). The FMLA defines a "serious health condition" as "an illness . . . that involves" "inpatient care in a hospital" or "continuing treatment by

7

a health care provider." 29 U.S.C. § 2611(11). Federal regulations exclude conditions like "the common cold, *the flu*, ear aches, [and] upset stomach" from qualifying as a "serious health condition." 29 C.F.R. § 825.113(d) (emphasis added). Federal regulations also define what constitutes "continuing treatment by a health care provider." *Id.* § 825.115.

In the Sixth Circuit, plaintiffs have two "theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006) (internal quotation omitted).

Title 29 U.S.C. § 2615(a) makes it illegal "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA leave rights. To prove an FMLA interference claim, a plaintiff must show that "(1) she was an eligible employee; (2) the defendant is an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian*, 454 F.3d at 556. The plaintiff in an FMLA claim must show prejudice as a result of an FMLA violation. "An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003); *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) (citations omitted) ("[I]n an FMLA interference claim, an employer may prove it had a legitimate reason unrelated to

8

the exercise of FMLA rights for terminating the employee. . . . [T]he plaintiff could rebut the employer's reason by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant termination.").

In contrast, the retaliation theory focuses on "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Seeger v. Cincinnati Bell Tel. Co.*, LLC, 681 F.3d 274, 282 (6th Cir. 2012) (internal quotations and quotation omitted). To prevail, Plaintiff must first "[make] a prima facie case for FMLA retaliation." *Marshall v. The Rawlings Co.*, 854 F.3d 368, 381 (6th Cir. 2017). Specifically, Plaintiff must show that he [1] "availed [himself] of a protected right under the FMLA; [2] [his] employer knew [he] availed [himself] of [his] right under the FMLA; [3] [he] suffered an adverse employment action; and [4] there was a causal connection between the exercise of [his] rights under the FMLA and the adverse employment action." *Id.* (citations removed); *Seeger*, 681 F.3d at 283. "The burden of proof at the prima facie stage is minimal; and the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Seeger*, 681 F.3d at 283 (quoting *Dixon v. Gonzales*, 381 F.3d 324, 333 (6th Cir. 2007)).

After Plaintiff presents a prima facie case of FMLA retaliation, Defendants must "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Marshall*, 854 F.3d at 382. Plaintiff can rebut any alleged nondiscriminatory justification for termination by "establish[ing] pretext [through] showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were

9

insufficient to warrant the action." *Seeger*, 681 F.3d at 285 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

When an employee, like Plaintiff in the present case, seeks to utilize intermittent FMLA leave for a qualifying condition, "the eligible employee, during his employment, must request leave and give the employer notice that he is requesting leave for a serious health condition that renders him unable to perform his position's duties." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004). "When the need for leave is 'not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case.'" *Koch v. Thames Healthcare Grp., LLC*, No. 20-5367, 2021 WL 1940410, at *4 (6th Cir. May 13, 2021) (quoting 29 C.F.R. § 825.303(a)). An employee, however, "does not have to expressly assert [a] right to take leave as a right under the FMLA." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir. 2003).

The most recent version of the regulation governing such notice, adopted in 2009, heightened the requirements for an employee previously certified for intermittent FMLA leave:

> When an employee seeks leave for the first time for a FMLA–qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA–protected leave, the employee *must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.* The employer will be expected to obtain any additional required information through informal means. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA–qualifying.

29 C.F.R. § 825.303(b) (emphasis added). A district court recently elaborated on the 2009 changes:

10

> [W]hen implementing the 2009 FMLA regulations, the Department of Labor ("DOL") "changed [section 825.303(b) ] to include a different notice standard when the employee requests unforeseen leave due to a previously certified FMLA-qualifying reason." The Family and Medical Leave Act of 1993, 73 Fed. Reg. 67934-01, at 68009 (Nov. 17, 2008) (emphasis added). In that case, the notice must reference either the employee's qualifying reason or the FMLA. *See* 29 C.F.R. § 825.303(b). . . This change was premised, in part, on the view that "employees are already aware that leave for the reason is FMLA-protected." 73 Fed. Reg. 67934-01, at 68009.

*Holladay v. Rockwell Collins, Inc.*, 357 F. Supp. 3d 848, 859 (S.D. Iowa 2019). *See also Perry v. Am. Red Cross Blood Servs.,* 651 F. App'x 317, 328 (6th Cir. 2016) ("'FMLA regulations effective January 16, 2009 ... explicitly permit[ ] employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances.'") (quoting *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013)).

Neither party disputes that Plaintiff's depression and generalized anxiety disorder qualifies as "a serious health condition" entitling him to FMLA leave, rather the issue of summary judgment revolves around the question of notice. *See* 29 U.S.C. § 2611(11). Relying on 29 C.F.R. § 825.303(b), the essence of Defendant's argument is that Plaintiff failed to "provide[] adequate notice of his intent to take FMLA leave on December 6, 7, or 8" when he called in sick "without referencing his condition or the need for FMLA." (ECF No. 22, PageID.104, 108.) Defendant contends that the recordings of Plaintiff's calls to FCA's attendance hotline directly support this conclusion. (*Id.*) Defendant reasons that "both [Plaintiff's] interference and retaliation claims fail" because without providing "adequate notice of his intent to take leave, [Plaintiff] cannot demonstrate that 1) he provided such notice; 2) that he was engaged in protected activity when he took

11

the leave; and 3) that FCA US knew he was exercising and FMLA protected right." (*Id.,* PageID.108.)

Plaintiff responds by arguing that he provided Defendant "reasonably adequate" notice of his qualifying reason for leave during the call-ins. (ECF No. 24, PageID.231 (quoting *Brenneman*, 366 F.3d at 421).) He contends that the language he used during the call—stating that he was having "flare-ups," and on the later call, that "I've been sick the past few days"—was sufficient to apprise Defendant that his call-offs were in fact related to his pre-certified FMLA qualifying condition. In support, Plaintiff points to a health care provider certification form prepared by his doctor as part of the initial FMLA certification process. (*Id.*, PageID.232.) On the form, the doctor stated that Plaintiff would be unable to perform "[a]ny/all duties related to job during the flare-up of symptoms." (ECF No. 24-7, PageID.354.) Therefore, Plaintiff contends that his use of the term "flare-up" combined with this past documentation was enough to "reasonably apprise Defendant of Plaintiff's request to take leave" for a covered reason. (ECF No. 24, PageID.232.) Alternatively, he suggests, based on the email records of FCA's H.R. Supervisor LaVonda Mitchell, that Defendant "knew Plaintiff was taking FMLA leave on December 6, 7 and 8 of 2017" so summary judgment is not appropriate on the claims. (*Id.*, PageID.233.)  Plaintiff's argument falters.

"Whether an employee's notice is sufficient to apprise the employer of the need for FMLA leave is a mixed question of fact and law." *Shelton v. Price Waterhouse Coopers, LLP*, No. 8:12-CV-02757-T-27, 2014 WL 2581350, at *1 (M.D. Fla. May 23, 2014) (citing *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir.2001)). "Although it is within the province of the jury to determine

12

the facts of the notice given, it is for the court to determine whether those facts are sufficient reasonably to give an employer notice as required by the FMLA." *Cavin*, 346 F.3d at 723. "Therefore, for summary judgment purposes, [the court] should determine whether, viewing the facts in the light most favorable to [Plaintiff], [Plaintiff] has complied with the FMLA's notice requirements as a matter of law. *Id.*

Plaintiff does not challenge the veracity of the recorded calls he made to FCA's attendance hotline and does not contest that he was absent or tardy on the days in question.[2] Nor does he dispute that under the conditions of his reinstatement letter, even one additional unexcused absence or tardy would constitute sufficient grounds for his termination. Defendant, on the other hand, does not dispute that Plaintiff had a health condition that certified him for intermittent FMLA leave. Because these pertinent facts are settled, all that remains is for the court to determine if Plaintiff reasonably provided notice as required by 29 C.F.R. § 825.303(b), as a matter of law, during the call-ins in question. *See Cavin,* 346 F.3d at 723. Because of Plaintiff's poor attendance in the past, his failure to provide reasonable notice regarding even a single disputed absence would constitute sufficient grounds for Plaintiff's termination under the terms of

---

[2] While Plaintiff initially "recollected" in his deposition—without the benefit of the audio recordings of his call-ins to refresh his memory—that he was "sure" he used the word "FMLA" when he called in his December absences (*see* ECF No. 24-2, PageID.282), now that audio recordings of the call-ins have been produced, Plaintiff's briefing does not make the same argument, instead relying on the language used by the Plaintiff during the recordings. (ECF No. 24, PageID.233.) Even if Plaintiff did raise such a factual contention, at the summary judgment stage, the court is not required to credit "testimony that is blatantly and demonstrably false.*" Davis v. Gallagher,* 951 F.3d 743, 750 (6th Cir. 2020). So, the court need not—and does not—credit Plaintiff's previous assertion that he expressly mentioned FMLA during the call-ins. *See, e.g., Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (holding that a court, when determining whether there is a genuine dispute of material fact in a case, may ignore testimonial evidence when it is "blatantly contradicted" by video evidence).

13

his conditional reinstatement, so he faces an uphill battle to persuade. The court holds that, as a matter of law, Plaintiff's call-in failed to satisfy the notice requirement.

When calling into the hotline on December 6, 2017, Plaintiff merely told the operator that he was having a "flare-up," "didn't feel well" and needed to go to the doctor. (ECF No. 22-16, PageID.194.) "Flare-up" is defined as "a sudden appearance or worsening of the symptoms of a disease or condition." Flare-up, Webster's Third International Dictionary, Unabridged (2020). Just like the term "sick"— which is specifically cited by the applicable regulation as being insufficient to provide an employer notice that a leave request is based on an FMLA qualifying condition—there is no evidence showing that the term "flare-up" is tied to any particular disease or medical condition, and can apply to most chronic ailments. In common parlance it would not be unusual, for instance, for a person to say he is having a "flare-up" of seasonal allergies or acid reflux, conditions unlikely to meet the FMLA's definition of a "serious medical condition." *See* 29 C.F.R. § 825.113. The court holds that the use of such general language, despite a single use of the phrase in the doctor's certification, is not sufficient to put a reasonable employer on notice that an employee was suffering from an FMLA-qualifying condition. Similarly, the use of a generalized term such as "sickness" in a doctor's FMLA certification letter would not give an employee license to say only that he was "sick" every time he wanted to take FMLA leave.

Further, when prompted, Plaintiff also declined to elaborate on the nature of his "flare-up." (*See id.* ("THE OPERATOR: So illness?, MR. RENDER: Yes.").) While reasonableness of notice is viewed from the perspective of the employer, it is nevertheless notable that Plaintiff also admitted in his deposition that he purposefully

14

obfuscated the actual reason he was taking the day off. His intentional refusal to elaborate on the reason for his unexcused absence calls into question his compliance with his obligation under 29 C.F.R. § 825.303(b) "to respond to an employer's questions designed to determine whether an absence is potentially FMLA–qualifying." (*See* ECF No. 22-2, PageID.150 (Plaintiff recalling that he "could have" given the impression that he had the flu when he called in because "I just was embarrassed. . . I didn't want to tell them what I was really going through" regarding his anxiety and depression).)[3]

Plaintiff's statements during the December 8 call-in were even more cryptic. Plaintiff stated only that "he had been sick for the last few days" and would be arriving late to work. (ECF No. 22-16, PageID.195-97.) And Plaintiff's explanation for being tardy on January 5, 2018, would also lead a reasonable employer to conclude that Plaintiff was suffering from a minor illness not covered by FMLA. (ECF No. 22-16, PageID.198-99.)

Citing a 2003 district court decision, Plaintiff suggests that his cryptic call-ins were sufficient to place an obligation on Defendant to inquire further to determine if Plaintiff's absences were for an FMLA qualifying reason because the employer knew of his FMLA qualifying condition. (ECF No. 24, PageID.235.) *See Miller v. GB Sales & Serv.*, Inc., 275 F. Supp. 2d 823 (E.D. Mich. 2003) (Edmunds, J.). In *Miller*, the court granted summary judgment for a severely diabetic and depressed warehouse worker who was fired for "excessive absenteeism" despite her employer having extensive knowledge of her medical conditions that led to her calling off work. *Id.* at 824-26.

---

[3] The parties continue to dispute whether Plaintiff called in on December 7, because FCA has no record of an additional call-in on that date.

15

Plaintiff notes that the *Miller* court found 'that [defendant's] knowledge of [plaintiff] Miller's serious health conditions placed the burden on it to inquire further whenever Miller called in sick for medical reasons to determine if those reasons were FMLA-qualifying." *Id.* at 829. (*Id.*)

Defendant points out, however, that "*Miller* is inapposite [as]. . . it predates the 2009 revisions to the employee notice requirements in 29 CFR 825.303(b)." (ECF No. 25, PageID.408.) As a pre-certified, and previous recipient of FMLA leave during his first stint with FCA, Plaintiff in the present case had a heightened obligation, compared to the Plaintiff in *Miller*, to inform his employer before taking FMLA leave under current regulations. *See* 29 CFR 825.303(b) ("When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA–protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave.") Given this higher standard and the cryptic content of Plaintiff's call-ins, Plaintiff "has not shown that [Defendant] ha[d] the duty to further inquire." *See Weintraub v. City of Dearborn*, No. 13-11481, 2015 WL 6955417, at *3 (E.D. Mich. Nov. 10, 2015) (Hood, J.) ("[Previous approval under] [t]he FMLA. . . does not provide an employee with a right to take unscheduled and unpredictable leave of absences for the rest of his career."). Even if Defendant had acquired a duty to inquire further about the reasons for the Plaintiff's absences, the content of the call-ins and Plaintiff's own testimony—that he intended to obscure the FMLA qualifying reason for his absences out of embarrassment—show that Plaintiff refused to elaborate that he was calling in for a qualifying reason as required by the FMLA.

There is also no genuine factual dispute regarding the actual knowledge of FCA's HR Supervisor LaVonda Mitchell. Plaintiff points to an email that Mitchell sent after 10 pm on December 8—inquiring about whether Plaintiff's recent absences were marked as FMLA qualifying. (ECF No. 24, PageID.233.) Plaintiff suggests that the existence of such an email suggests that Mitchel must have actually known Plaintiff had requested FMLA leave for a qualifying reason when he called in the previous three days. (*Id.*) As Defendant points out, however, Mitchell's email suggests only that Plaintiff claimed the absences were FMLA qualifying *after* he returned to the evening of December 8, 2017 and was questioned by his supervisors. (ECF No. 22-3, PageID.163.) Plaintiff's assertion that Mitchell already knew of Plaintiff's intent to take FMLA leave when he called in is mere conjecture that is not supported by direct evidence and therefore does not present a genuine dispute of a material fact. The most logical reading of the email communications, and the one that is also supported by Mitchel's sworn testimony, is that she merely took steps to verify Plaintiff's newly asserted reason for his absences after his return to work late in the evening on December 8, 2017. Plaintiff has failed to point to any facts in the record that directly challenge this view.

Because the court finds that Plaintiff failed to properly "give the employer notice of h[is] intention to take leave," a required element of a prima facie FMLA interference claim, the court awards summary judgment to Defendant on this count. *See Donald*, 667 F.3d at 761. Similarly, Plaintiff's retaliation claim fails since he cannot establish that he was engaged in a protected activity when he took leave or that his employer knew he had actually availed himself of his right under FMLA when it decided to terminate him for unexcused absences. *See Perry*, 651 F. App'x at 329 (dismissing plaintiff's

17

retaliation claim after her failure to follow call-in procedure led to her termination despite her preexisting approval for intermittent FMLA leave).[4]

## IV. CONCLUSION

While Plaintiff was pre-certified for intermittent FMLA leave, undisputed recordings demonstrate that Plaintiff failed to provide his employer reasonably adequate notice of his intent to take leave for a FMLA qualifying reason when called Defendant FCA's attendance hotline. Therefore, Plaintiff's termination under the FCA's progressive attendance policy was justified, and Plaintiff's FMLA interference and retaliation claims must fail as a matter of law. Accordingly,

IT IS ORDERED that Defendant FCA's Motion for Summary Judgment (ECF No. 31) is GRANTED.

Inasmuch as all claims have not been resolved, the court will issue a separate judgment in favor of Defendants.

                                             s/Robert H. Cleland               /
                                             ROBERT H. CLELAND
                                             UNITED STATES DISTRICT JUDGE

Dated: July 20, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 20, 2021, by electronic and/or ordinary mail.

                                             s/Lisa Wagner                  /
                                             Case Manager and Deputy Clerk
                                             (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\19-12984.RENDER.MSJ.AAB.RHC.2.docx

---

[4] Because the court has awarded summary judgment to Defendant FCA due to Plaintiff's failure to provide adequate notice his desire to take intermittent FMLA leave, the court declines to directly consider Defendant's alternative argument—that Plaintiff's failure to call Sedgwick's FMLA hotline before taking his first allegedly FMLA qualifying absence was also justifies his termination. (*See* ECF No. 22, PageID.110-12.)